**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

LINDA KEATON,

                Plaintiff,

vs.                                  Case No.  3:12-cv-1367-J-JRK

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.

_____/

## OPINION AND ORDER[1]

### I.  Status

      Linda Keaton ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits ("DIB").  Her alleged inability to work is based upon "Polycythemia vera– blood disorder[.]"  Transcript of Administrative Proceedings (Doc. No. 14; "Tr."), filed April 15, 2013, at 212.  On January 29, 2009, Plaintiff filed an application for DIB, alleging an unknown onset disability date.  Tr. at 206-07.[2]  Plaintiff later amended her alleged onset disability date to April 7, 2008.  Tr. at 206.  Plaintiff's claim was denied initially, Tr. at 88, 90-92, and was denied upon reconsideration, Tr. at 89, 96-98.

---

[1]      The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 7), filed January 9, 2013; Reference Order (Doc. No. 8), signed January 9, 2013 and entered January 10, 2013.

[2]      Plaintiff's application does not appear to be included in the administrative transcript. This citation is to an amendment to Plaintiff's application.

On October 27, 2010 and May 2, 2011, hearings were held before an Administrative Law Judge ("ALJ"), during which Plaintiff and a medical expert ("ME") testified.  Tr. at 37-63 (May 2, 2011 hearing), 64-87 (October 27, 2010 hearing).[3]  Plaintiff was represented by an attorney at her hearings.  Tr. at 37, 64.  At the time of the first hearing, Plaintiff was sixty (60) years old, Tr. at 68, and at the time of the second hearing, Plaintiff was sixty one (61) years old, Tr. at 62.  During the second hearing, the ALJ noted that the issue presented by Plaintiff's case was "fairly complex" and requested that Plaintiff's counsel file a post-hearing brief, Tr. at 61, which counsel did, Tr. at 280-81.

The ALJ issued an unfavorable Decision on August 2, 2011, finding Plaintiff not disabled through the date of the Decision.  Tr. at 19-31.  On October 26, 2012, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, thereby making the ALJ's Decision the final decision of the Commissioner.  Plaintiff then commenced this action on December 20, 2012 under 42 U.S.C. § 405(g) by filing a Complaint (Doc. No. 2), seeking judicial review of the Commissioner's final decision.

Plaintiff raises two issues on appeal: whether the ALJ erred at step two of the sequential evaluation process by failing to find Plaintiff's "pain disorder" to be a severe impairment; and whether the ALJ erred in discounting the opinion of Plaintiff's treating physician, Charles J. Franson, D.O., regarding the effects of Plaintiff's impairments on her ability to work.  Plaintiff's Memorandum of Law in Opposition to the Commissioner's Decision Denying Plaintiff Disability Insurance Benefits (Doc. No. 20; "Pl.'s Mem."), filed July 1, 2013,

---

[3]       The face page of the transcript of the May 2, 2011 hearing states that the ME is a "Vocational Expert," Tr. at 37, but the body of the transcript makes clear that the individual is actually an ME, Tr. at 39-62.

at 1,10-14.[4]   On August 28, 2013, Defendant filed a memorandum addressing the issues raised by Plaintiff.  See Memorandum in Support of the Commissioner's Decision (Doc. No. 21; "Def.'s Mem.").  After a thorough review of the entire record and consideration of the parties' respective memoranda, the Commissioner's final decision is due to be reversed and remanded for the reasons explained herein.[5]

## II.  The ALJ's Decision

When determining whether an individual is disabled,[6] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

---

[4]        Plaintiff actually titles the first issue "whether [the] ALJ . . . committed error at step 2 of the sequential evaluation by not finding Plaintiff['s] . . . erythrocytosis and chronic obstructive pulmonary disease to be severe impairments[.]"  Pl.'s Mem. at 1 (capitalization and emphasis omitted).  As explained below, however, the ALJ in fact found these impairments to be severe, Tr. at 21, and Plaintiff in the body of her memorandum actually contests the failure to find her "pain disorder" to be severe, Pl.'s Mem. at 11.

[5]        Plaintiff requests oral argument. Pl.'s Mem. at 1.  The undersigned finds that oral argument is not necessary to decide the issues raised by Plaintiff.

[6]        "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 21-31.  At step one, the ALJ observed that Plaintiff "has not engaged in substantial gainful activity since April 7, 2008, the alleged onset date."  Tr. at 21 (emphasis and citation omitted).  At step two, the ALJ found that Plaintiff suffers from "the following severe impairments: erythrocytosis and chronic obstructive pulmonary disease (COPD)."  Tr. at 21 (emphasis and citation omitted).[7] At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. at 22 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the residual functional capacity ("RFC") "to perform the full range of medium work as defined in 20 CFR [§] 404.1567(c)."  Tr. at 22 (emphasis omitted).  At step four, the ALJ found Plaintiff "is capable of performing past relevant work as a clerk for the electric company."  Tr. at 30 (emphasis omitted).  At step five, after considering Plaintiff's age (60 at first hearing, 61 by the date of the Decision), education ("at least a high school education"), work experience, and RFC, the ALJ determined alternatively that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] also can perform[.]"  Tr. at 30 (citation omitted).  The ALJ concluded that Plaintiff "has not been under a disability . . . from April 7, 2008, through the date of th[e D]ecision."  Tr. at 31 (emphasis and citation omitted).

---

[7]     The ALJ found that Plaintiff's "impairments of hypertension, hyperlipidemia and depression" are all non-severe because they "do not cause more than minimal functional limitations[.]" Tr. at 21.

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence."  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV.  Discussion

The undersigned first addresses Plaintiff's argument regarding her treating physician's opinion being improperly discounted, followed by Plaintiff's argument regarding the ALJ's alleged step two error.

## A. Discounting of Treating Physician Dr. Franson's Opinion

Dr. Franson, one of Plaintiff's treating physicians, completed a Residual Functional Capacity Questionnaire on October 21, 2010.  Tr. at 620-22.[8]  Dr. Franson opined as follows.  Plaintiff can stand or walk one hour per day; she can sit one hour per day; she cannot lift even ten pounds and can only lift occasionally; she cannot perform simple grasping, pushing, or pulling; she can use her feet for operating foot controls; she cannot bend, squat, crawl, or climb; and she can reach above shoulder level.  Tr. at 620-21.  Plaintiff cannot "sustain activity at a pace and with the attention to task as would be required in the competitive work place[.]" Tr. at 621.  Plaintiff also cannot "be expected to attend any employment on an eight (8) hour /5 days a week basis[.]" Tr. at 621.  Plaintiff also has unspecified non-exertional limitations.  Tr. at 621.

Dr. Franson also completed interrogatories on November 22, 2010 mainly regarding Plaintiff's smoking.   Tr. at 633-36. According to Dr. Franson's responses to the interrogatories, he has treated Plaintiff for eight years for "HTN,[[9]] Hyperlipidemia, [and] Tob[acco] Abuse[.]" Tr. at 633.  Since as early as 2004, Dr. Franson has both urged Plaintiff to stop smoking and prescribed cession of smoking.  Tr. at 633.  Plaintiff's smoking has exacerbated her conditions.  Tr. at 634.  Plaintiff has been prescribed and has used different methods in an attempt to stop smoking.  Tr. at 634.  Plaintiff "states she has stopped" smoking.  Tr. at 634.  If Plaintiff actually stopped smoking, she could expect moderate improvement of her medical conditions, but she would still experience difficulty walking.  Tr.

---

[8]        A duplicate of the questionnaire is found in the administrative transcript at pages 658-60.

[9]        The undersigned surmises that HTN stands for hypertension, or high blood pressure.

at 635, 636.  Additionally, if Plaintiff had stopped when first told to do so (2004), she would have had moderate improvement, but she still would have difficulty walking.  Tr. at 635.

The Regulations instruct ALJs how to properly weigh the medical opinions[10] of treating physicians.[11]  See 20 C.F.R. § 404.1527(c).  Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  Id.  When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering factors such as the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician.  Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence

---

[10]    "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

[11]    A treating physician is a physician who provides treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted practice for the type of treatment and/or evaluation required for the condition.  See 20 C.F.R. § 404.1502.

supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records.  Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

"[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987)(per curiam)).  "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'"  Id. (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)). "[W]hen the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,'" the decision will not be affirmed "'simply because some rationale might have supported the ALJ's conclusion.'"  Id. (quoting Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam)).

Here, the ALJ "rejected" Dr. Franson's opinion in its entirety, electing instead to rely on the opinion of Dr. Karsh, the ME who testified at the hearing.  Tr. at 29.  The sole explanation provided by the ALJ for rejecting Dr. Franson's opinion is as follows:

> The medical opinion of the treating physician (Dr. Franson) is rejected here and given no probative weight because the opinion is not supported by the treating notes or by the objective medical evidence in the file and the opinion is contrary to another expert medical opinion (Dr. Karsh) that [is] more persuasive.  See: SSR 96-2p.

Tr. at 29.  Plaintiff contends this discounting was improper, Pl.'s Mem. at 12-14; Defendant responds that the ALJ appropriately relied on the opinion of ME Dr. Karsh over that of Dr. Franson, Def.'s Mem. at 9-11.

The undersigned finds that the ALJ did not state with the requisite specificity his reasons for discounting the opinion of Dr. Franson.  To the extent that the ALJ merely recited  recognized "good cause" reasons for discounting Dr. Franson's opinion -- i.e., the opinion is not supported by the objective medical evidence or the doctor's treatment notes -- without more, this recitation is insufficient.  The ALJ did not explain his reasoning with any specificity.  Cf. Gayler v. Astrue, No. 5:07-cv-121-Oc-GRJ, 2008 WL 4327050, at *6 (M.D. Fla. Sept. 18, 2008) (unpublished) (reversing and remanding ALJ's decision to discount a treating physician's opinion when "the ALJ failed to explain or even provide a clue as to how [the treating physician's] opinion was inconsistent with other record medical evidence"); Russ v. Astrue, No. 3:07-cv-1213-J-MCR, 2009 WL 764516, at *10 (M.D. Fla. Mar. 20, 2009) (unpublished) (finding an ALJ's "dismissal" of a treating physician's opinion was "deficient" when the ALJ noted the opinion "was 'not supported by objective findings,'" but did not provide any explanation for the reason) (quoting ALJ's Decision).  Without the ALJ clearly articulating an explanation for rejecting Dr. Franson's opinion, judicial review is frustrated because the Court cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence.

In discounting Dr. Franson's opinion, the ALJ also stated Dr. Franson's opinion is "contrary to" the "more persuasive" opinion of Dr. Karsh. Tr. at 29.  Without more explanation, however, that statement does not aid the Court in determining whether the

decision to discount Dr. Franson's opinion in favor of Dr. Karsh's opinion was rational and supported by substantial evidence.  Defendant contends that the ALJ specifically discussed Dr. Franson's opinion with the ME during the hearing, and "[t]he ME opined that no findings supported the[] limitations" assigned by Dr. Franson.  Def.'s Mem. at 9-10 (citing Tr. at 43).  The portion of the transcript to which Defendant cites for this contention, however, shows the ALJ was discussing with the ME the opinion of consultative examiner Robert A. Greenberg, M.D.  See Tr. at 43.  The ALJ did not inquire of Dr. Karsh how Dr. Franson's opinion is allegedly inconsistent with the objective medical evidence or Dr. Franson's own notes.[12]  In sum, the ME's testimony sheds little, if any, light on how Dr. Franson's opinion was allegedly infirm in that it is supposedly inconsistent with objective medical evidence and unsupported by his own notes.[13]

For all of the foregoing reasons, judicial review of the discounting of Dr. Franson's opinion is frustrated and remand is required for further consideration of it.

**B.  Step Two Error**

Plaintiff contends the ALJ erred at step two of the sequential evaluation process by failing to find Plaintiff's "pain disorder" to be a severe impairment.  Pl.'s Mem. at 11-12.  Defendant responds by asserting that substantial evidence supports the failure to find the

---

[12]     There are only two possible references in the hearing transcript to Dr. Franson's opinion.  First, Plaintiff's attorney asked Dr. Karsh about the reasonableness of "two doctors" concluding that Plaintiff is unable to work for an eight hour day, which the ME responded was not reasonable.  Tr. at 51.  Second, Plaintiff's attorney asked Dr. Karsh about Plaintiff's "doctor's" apparent reliance on "chronic fatigue" in rendering an opinion, which the ME responded was not appropriate given that the underlying condition had allegedly been corrected.  Tr. at 54-55.

[13]     Reading the whole transcript of the hearing during which the ME testified does not give the Court very much confidence in the ME's preparedness for the hearing.  See Tr. at 39-63.  This is important given that the ALJ relied heavily on the ME in determining Plaintiff's RFC, and the ALJ did not explain with the requisite specificity why he discounted the contrary opinion of the treating physician.

impairment to be severe, and any error at step two is harmless because it is clear that the ALJ considered the disorder at later steps of the sequential evaluation process.  Def.'s Mem. at 6-7.  Although the ALJ at step two did identify all alleged impairments by finding some to be severe and others to be non-severe, the ALJ did not discuss at step two Plaintiff's alleged pain disorder.  See Tr. at 21.  Because this matter is due to be remanded for further consideration of Dr. Franson's opinion, the ALJ shall explicitly state at step two of the sequential evaluation process whether Plaintiff's alleged "pain disorder" is severe, and if not, why not.

## V.  Conclusion

For the foregoing reasons, it is

**ORDERED**:

1.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

(A)    Reevaluate the medical opinion of Dr. Franson and state with particularity the weight afforded; if the opinion is discounted, adequate reasons showing good cause for discounting it shall be provided and shall be supported by substantial evidence;

(B)    State at step two whether Plaintiff's "pain disorder" is a severe impairment, and if not, why not; and

(C)    Take such other action as may be necessary to resolve this claim properly.

2.      The Clerk is further directed to close the file.

3.      In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) or § 1383(d)(2) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** at Jacksonville, Florida on March 9, 2014.

JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record

-12-